**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| BAY ADVANCED TECHNOLOGIES, LLC, | ) ) | CASE NO. 1:25CV2419 |
| Plaintiff, | ) ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) ) | |
| SMTC CORPORATION, | ) ) | OPINION AND ORDER |
| Defendant. | ) ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #7) of Defendant SMTC Corporation to Dismiss Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(b)(6).  For the following reasons, the Motion is granted in part.

## I. BACKGROUND

Plaintiff Bay Advanced Technologies, LLC ("Bay"), a manufacturer and distributor of specialized industrial components, supplied products to Defendant SMTC Corporation ("SMTC"), an electronics manufacturing services provider, for use in fulfilling its obligations to a third-party customer, ChargePoint, Inc.  Beginning in 2021, Defendant placed purchase orders with Plaintiff for goods to be used in ChargePoint's manufacturing operations.  Plaintiff alleges that the purchase orders were subject to specific terms and conditions, including that the goods were non-cancelable and non-returnable.  Defendant allegedly began to fall behind on payments; and in August of 2024, had an outstanding balance of $1,083,303.00 ("AR Balance").  Moreover, Plaintiff stored inventory ordered by Defendant, but for which Defendant refused to accept

delivery, for a total value of $2,000,036.00 ("Remaining Inventory"). After some negotiations, the parties entered into a Payment Plan and Release Agreement effective on August 8, 2024. (Exhibit B, ECF DKT #1-2). The parties agreed to establish a schedule for new purchase orders ("New P.O.'s"), to resolve outstanding balances ("AR Balance") and to address the Remaining Inventory. The Agreement provided for a monthly Inventory Holding Charge; mutual releases upon Defendant's payment in full of the AR Balance, the New P.O.'s and the Remaining Inventory; and remedies in the event of a breach. Defendant satisfied the AR Balance and made scheduled prepayments on the New P.O.'s. However, on January 16, 2025, Defendant sent Plaintiff a written notice cancelling all open orders in connection with ChargePoint, instructing Plaintiff to mitigate all associated costs and requesting full details on any open orders. (Exhibit C, ECF DKT #1-3). Plaintiff responded by demanding adequate assurance of performance as authorized in § 2-609 of the Uniform Commercial Code. Failure to provide such assurance would be considered repudiation and breach of the Agreement. (Exhibit D, ECF DKT #1-4). Plaintiff alleges that Defendant has not paid for nor accepted delivery of the Remaining Inventory, has not paid the Holding Charges nor otherwise performed under the Agreement.

The instant lawsuit followed on November 7, 2025. Plaintiff asserts claims for Breach of Contract (Count I); Failure to Provide Adequate Assurances under UCC § 2-609 (Count II), Anticipatory Repudiation under UCC § 2-610 (Count III), Breach of the Implied Covenant of Good Faith and Fair Dealing (Count IV) and Unjust Enrichment (Count V).

Defendant moves for dismissal of the entire Complaint for failure to state a cognizable claim for relief. Count I relies on duties and obligations that are not imposed by the Release Agreement. The UCC claims fail because the Agreement is not a contract for sale of goods. The

implied covenant claim in Count IV is not independently actionable under Ohio law. Recovery for unjust enrichment is barred because the parties' conduct is governed by an express written contract.

## II. LAW AND ANALYSIS

### Standard of Review - Fed.R.Civ.P. 12(b)(6)

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). The United States Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-plead factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679.

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Weisbarth v. Geauga Park Dist.*, 499

F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir.2007)).

The court should disregard conclusory allegations, including legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555; *J & J Sports Prods. v. Kennedy*, No. 1:10CV2740, 2011 U.S. Dist. LEXIS 154644, *4 (N.D.Ohio Nov. 3, 2011).

The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

"Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations ... a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable ..." *Twombly*, 550 U.S. at 556.

## Breach of Contract - Count I

To establish a claim for breach of contract under Ohio law, a plaintiff must show by a preponderance of the evidence:  (1) the formation of a binding contract or agreement; (2) that the plaintiff performed its obligations under the contract; (3) that the defendant failed to fulfill its obligations without a legally valid excuse; and (4) that the plaintiff suffered damages resulting from such failure. *See, Capital Equity Grp. v. Ripken Sports Inc.*, 744 F. App'x 260, 262–63 (6th Cir. 2018), citing *Carbone v. Nueva Constr. Grp., LLC*, 2017-Ohio-382, 83 N.E.3d 375, ¶ 14 (8th Dist.).

Defendant contends that the Release Agreement contains an express integration clause and thus, supersedes any prior agreements on the same subject matter.  Also, Defendant argues that the parties only agreed to re-open negotiations to resolve disputes over Remaining Inventory.

There is no obligation to accept delivery or to pay for the Remaining Inventory. Nor does Defendant believe it has an obligation to pay an Inventory Holding Charge. The Agreement requires negotiations about the inventory and Plaintiff never sought to negotiate. Moreover, Plaintiff cannot rely on its own failure to mitigate in order to recover damages from Defendant. In Defendant's view, the Holding Charge applies when the inventory is held for SMTC's benefit; and once Defendant cancelled orders, it no longer benefitted from Plaintiff holding the Remaining Inventory.

The August 8, 2024 Payment Plan and Release Agreement is attached to Plaintiff's Complaint as Exhibit B. The Agreement reflects that the introductory "Whereas Clauses" are a substantive part of this Agreement and not mere recitals. In pertinent part, they recite: "WHEREAS, SMTC wishes to issue new purchase orders to Bay for additional goods and/or services;" "WHEREAS, Bay also continues to store certain inventory **ordered by SMTC**, with a total value of $2,000,036 (the "Remaining Inventory"), for which, as of the Effective Date, SMTC has thus far **refused to accept delivery"**; and "WHEREAS, the Parties have agreed to enter into this Agreement to establish a schedule for the New P.O.'s while also **resolving all claims** between the Parties related to the AR Balance, the **open account on which the AR Balance is based**, and the **sales of goods and services by Bay to SMTC**, the Parties agree as follows." At paragraph 2, "SMTC also **agrees to pay** certain amounts towards the New P.O.'s in accordance with the following corresponding payment schedule. Once payment towards such New P.O.'s is received, Bay will fulfill such New P.O.'s." (Emphasis added). At paragraph 6 of the Agreement, each party agrees to fully release the other upon Defendant's "payment in full of the AR Balance, the New P.O.'s, and the Remaining Inventory."

According to Plaintiff's Complaint, Defendant made the scheduled prepayments toward the new Purchase Orders; but those payments did not satisfy Defendant's obligations under the Agreement. (ECF DKT #1 at ¶ 41). The parties agreed to work toward the consumption or other disposition of the Remaining Inventory. (*Id*. at ¶ 42). "Until a resolution is reached or the Remaining Inventory is consumed and paid in full, SMTC will pay a monthly holding charge of 1.25% . . . of the purchase price of the Remaining Inventory . . . as of January 1, 2025." (*Id*. at ¶ 43 & Exhibit B, paragraph 3b). The Complaint alleges that Defendant wrongfully cancelled open orders; refused to accept delivery and pay for the specifically-manufactured inventory; and refused to pay the outstanding Holding Charge. (*Id*. at ¶¶ 68-71). Plaintiff alleges that it has met its obligations under the Agreement. (*Id*. at ¶ 67). Plaintiff has sustained damages, including expenses, lost profits, interest, late fees and costs. (*Id*. at ¶ 72).

Upon consideration of the Complaint and the attached Agreement, and accepting Plaintiff's allegations as true, the Court finds that Plaintiff has stated a plausible claim to relief on Count I - Breach of Contract.

**UCC Claims - Counts II and III**

Article 2 of the UCC as set out in Ohio Revised Code Chapter 1302 applies to "transactions in goods." R.C. § 1302.02 (UCC 2-102). "Goods" include "specially manufactured goods" which are "movable at the time of identification to the contract for sale." "A purported present sale of future goods or of any interest therein operates as a contract to sell." R.C. § 1302.01 (A)(8).

Plaintiff asserts a claim for Count II - Failure to Provide Adequate Assurance (UCC § 2-609) and a claim for Count III - Anticipatory Repudiation (UCC § 2-610).

Defendant contends that the Agreement is not a "transaction" governed by the UCC. The Agreement does not identify specific goods to be sold, does not specify any quantity of goods to be delivered, does not fix a purchase price, does not require delivery and does not obligate either party to enter into future purchase orders. (Defendant's Reply Brief, ECF DKT #11 at 7).

However, per the "Whereas Clauses" of Exhibit B, which are considered by the parties to be "a substantive part of this Agreement and not mere recitals": Plaintiff holds inventory "ordered" by Defendant and for which Defendant has refused to accept delivery. The parties agreed to enter into the Agreement, among other things, to resolve claims related to "the sales of goods and services" by Plaintiff to Defendant.

On January 16, 2025, Defendant sent Plaintiff a notice cancelling open orders, seeking mitigation of associated costs and requesting details on open orders. (ECF DKT #1 at ¶ 46). On February 21, 2025, Plaintiff responded with a written demand for adequate assurance of performance. (*Id*. at ¶ 48). Defendant "failed and refused to provide such adequate assurance within a reasonable time and instead expressly denied its obligations under the Agreement." (*Id*. at ¶ 76). Plaintiff alleges that this intentional and wrongful conduct constituted anticipatory repudiation of the Agreement. (*Id*. at ¶ 84). In ¶ 78 and ¶ 85, Plaintiff's Complaint reads:

> Thus, **as an alternative claim for relief**, and to the extent the Agreement does not apply, in whole or in part, to Bay's claims, Bay is entitled to recover the full, fair, and reasonable value of the Remaining Inventory and the substantial costs incurred by Bay in procuring, storing, and maintaining the Remaining Inventory for SMTC's benefit. (Emphasis added).

Plaintiff has set forth a plausible claim for relief under Article 2 of the UCC in Counts II and III of the Complaint.

**<u>Breach of Implied Covenant of Good Faith and Fair Dealing - Count IV</u>**

Defendant argues that Count IV should be dismissed since there is no separate cause of action for breach of the implied covenant of good faith and fair dealing under Ohio law.  In opposition, Plaintiff posits that the implied covenant is a part of every contract even though Ohio does not countenance a standalone cause of action separate from a breach of contract claim. (Opposition Brief, ECF DKT #10 at 21).

In *Bell's Landscaping & Lawn Services, LLC v. Owens Corning Sales, LLC*, 2025-Ohio-5602, ¶¶ 36- 37, 275 N.E.3d 702 (Dec. 16, 2025), the Ohio Sixth District Court of Appeals cited favorably to *Lucarell v. Nationwide Mutual Insurance Company*, 152 Ohio St. 3d 453, 463-464 (2018) and instructed as follows:

> ¶ 36: "[U]nder Ohio law, 'there is an implied duty of good faith and fair dealing in every contract.' " *CosmetiCredit, LLC v. World Fin. Network Natl. Bank*, 2014-Ohio-5301, ¶ 35, 24 N.E.3d 762, (10th Dist.), quoting *Am. Contr.'s Indemn. Co. v. Nicole Gas Prod., Ltd.*, 2008-Ohio-5056, ¶ 13, 2008 WL 4416671 (10th Dist.).  Good faith is "a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St. 3d 433, 443-444, 662 N.E.2d 1074 (1996).
>
> ¶ 37:  While it is not an independent cause of action, the claim is "subsumed" within the breach of contract claim.  *See Krukrubo v. Fifth Third Bank*, 2007-Ohio-7007, ¶ 19, 2007 WL 4532689 (10th Dist.) ("[A] claim for breach of contract subsumes the accompanying claim for breach of the duty of good faith and fair dealing.").  This duty is integral to the contract, and therefore, "the breach of that duty, when alleged, is thus integral to the plaintiff's cause of action for breach of contract." *Id*.

In view of Plaintiff's concession that there is no standalone cause of action, and based upon Ohio's contract jurisprudence, the Court grants Defendant's Motion to Dismiss Count IV as it is subsumed within Count I - Breach of Contract.

**Unjust Enrichment - Count V**

The elements of unjust enrichment under Ohio law are:  "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).

Defendant argues that, because an existing contract governs the dispute between the parties, Plaintiff cannot have a viable claim for unjust enrichment.

Plaintiff's Complaint (ECF DKT #1) recites in pertinent part:

94. The Remaining Inventory and associated storage and carrying costs were incurred and provided by Bay for the direct benefit of SMTC, with SMTC's knowledge and direction.

95. SMTC benefited [sic] from Bay procuring, holding, and maintaining the Remaining Inventory, which was specifically manufactured and stored for SMTC's use and benefit.

96. SMTC retained that benefit under circumstances where it would be unjust for SMTC to retain the benefit without accepting delivery of and paying for the Remaining Inventory, together with the monthly holding charges and related storage and shipping costs.

97. Thus, as an alternative claim for relief, and to the extent the Agreement does not apply, in whole or in part, to Bay's claims, Bay is entitled to recover, and to avoid unjust enrichment, the full, fair, and reasonable value of the Remaining Inventory and the substantial costs incurred by Bay in procuring, storing, and maintaining the Remaining Inventory for SMTC's benefit.

Looking only at the Complaint, and in the absence of admissions in an answer or evidence showing that the existence of the Release Agreement is not in dispute, the alternative Unjust Enrichment claim can survive dismissal.  However, while it is proper to plead claims in the alternative, the Court cautions in this instance that Plaintiff is not entitled to a double

recovery. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) ("[It] goes without saying that courts can and should preclude double recovery."); *Son v. Coal Equity, Inc.*, 122 F. App'x 797, 802 (6th Cir. 2004).

**Leave to Amend**

Plaintiff has requested leave to amend its Complaint if the Court finds that any of its claims fail to withstand a 12(b)(6) motion to dismiss. However, the Court follows the Sixth Circuit's guidance that a plaintiff must properly file a motion for leave to amend under Fed R. Civ. P. 7(b) and cannot merely place such a request in a brief in opposition. *Prim Capital Corp. v. Pippen*, No. 1:09CV561, 2009 WL 2579810, *2 (N.D. Ohio Aug. 19, 2009) (citing *Begala v. PNC Bank*, Ohio N.A., 214 F.3d 776, 784 (6th Cir. 2000).

The policy behind this is that district courts should not "rescue" plaintiffs from the deficiencies of their complaints by offering leave to amend when plaintiffs do not properly request leave. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 438 (6th Cir. 2008). Similarly here, Defendant has pointed out deficiencies in the Complaint and Plaintiff should not have the benefit of being rescued by the Court merely because it has now become aware of these deficiencies. The Court denies the request for leave to amend.

### III. CONCLUSION

A pleading does not have to demonstrate probability; rather, "just enough factual information to create an expectation that discovery will uncover evidence supporting the claim." *Haber v. Rabin*, No. 1:16CV546, 2016 WL 3217869, at *3 (N.D.Ohio Jun.10, 2016), citing *Twombly*, 550 U.S. at 556. Dismissal under Rule 12(b)(6) is not appropriate even if a judge finds that the allegations are not believable. *Twombly*, 550 U.S. at 556.

Therefore, the Motion (ECF DKT #7) of Defendant SMTC Corporation to Dismiss the Complaint of Plaintiff Bay Advanced Technologies, LLC pursuant to Fed.R.Civ.P. 12(b)(6) is granted in part as to Count IV only.


**IT IS SO ORDERED.**

**DATE: June 24, 2026**     **s/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**